**Taylor ROARK, Plaintiff,**

v.

**John L. LEWIS et al., Defendants.**

**Maude W. REESE, Executrix of the Last Will and Testament of Joe S. Rees(e), Plaintiff,**

v.

**John L. LEWIS et al., Defendants.**

**Theo R. FULLER, Plaintiff,**

v.

**John L. LEWIS et al., Defendants.**

**Civ. A. Nos. 2417–65, 3092–66, 3192–66.**

United States District Court

District of Columbia.

May 16, 1969.

Orlin L. Livdahl, Jr., Landis, Cohen & Singman, Washington, D. C., for plaintiffs.

Harold H. Bacon, Washington, D. C., for defendants.

## MEMORANDUM

McGARRAGHY, Senior District Judge.

These three cases came on for hearing upon remand from the Court of Appeals in Cases No. 21,208, No. 21,209, and No.

21,210 pursuant to Opinion of that Court dated August 21, 1968, 130 U.S.App.D.C. 360, 401 F.2d 425.

The litigation was initiated by suits filed in this court in which it was contended that the plaintiffs are entitled to enrollment as beneficiaries of the United Mine Workers of America Welfare and Retirement Fund of 1950 for pensions which the Trustees of the Fund had denied.

The basis of the Trustees' denial of the plaintiffs' applications was that they were not eligible for the benefits because of a specific eligibility requirement promulgated by the Trustees that the applicant must have permanently retired from the industry following regular employment as an employee of an operator signatory to the Agreement.

The Trustees interpreted this Resolution as requiring an applicant's last employment in. the industry to have been with a signatory employer and that the word "following" meant that retirement must come "immediately after" such employment.

Upon cross-motions for summary judgment upon the record then made, the only issue raised was with respect to the correctness of the Trustees' interpretation of the eligibility requirement. This court granted the Trustees' motion for summary judgment, holding that their interpretation was correct and was not arbitrary or capricious.

On appeal, the Court of Appeals held that the Trustees' interpretation "is a patently reasonable one and that it falls short of arbitrary or capricious conduct."

However, the Court of Appeals next dealt with the appellants' arguments first raised in that Court that, if the Trustees' interpretation is lawful, the requirement itself is not. With respect to this contention, the Court of Appeals held that on the record, the appellants had made out a prima facie case as to the requirement's unreasonableness and the burden must be cast upon the Trustees to come forward with evidence establishing the reasonableness of their requirement based on the purposes of the Fund. Accordingly, the case was remanded to this court for a hearing at which the Trustees might show what, if any, reasonable relationship exists between the purposes of the Fund and the requirement that an employee's last regular employment be with a signatory operator.

Upon remand to this court, counsel for the parties entered into a supplemental stipulation and also took depositions of two witnesses which were filed in the case. Counsel have stipulated that these documents cover all of the available evidence on the issue of reasonableness, and that there is no genuine issue as to any material fact. The issues have been fully argued by counsel and submitted for determination by the court as on cross-motions for summary judgment.

It is not necessary to review the details of the establishment of the Fund which are related in the opinion of the Court of Appeals.

The hearing on remand was directed to the suggestion by the Court of Appeals that the record be enlarged with sufficient detail to permit the court to measure the Trustees' action against existing standards of arbitrary and capricious conduct. Counsel have advised this court that the record now made is deemed to constitute all the available material within the scope of the court's suggestion.

With respect to the suggestion that the circumstances of the plaintiffs be reviewed as to why they left their employment with contributing employers, as well as pertinent evidence as to economic factors, such as wage differentials, etc., it has been stipulated that the plaintiffs' failure to qualify by being employees of a signatory employer for one year immediately preceding their retirement was due to the fact that they were unable to find employment in the coal industry or find employment for an operator signatory to the National Bituminous Coal Wage Agreement of 1950, as amended, in the area of their homes or contiguous thereto in eastern Kentucky. The last regular employment of each plaintiff for

a signatory operator was terminated either because the mine was closed or the work force in the mine was reduced. In no case was the separation voluntary.

In the light of this stipulation, it is clear that the failure of these plaintiffs to qualify for pension benefits is due to no fault of theirs and, if that should be the determining factor with respect to the validity of the requirement, having in mind that the plaintiffs had served for many years in the industry as employees of signatory operators, the requirement would be held invalid as arbitrary and capricious.

■ However, the court is of the opinion that hardship which may result to certain individual employees is not necessarily the determining factor and the totality of the situation must be reviewed in determining whether the requirement is fair and reasonable in the light of the fact that the Fund was established for a large industry applying to thousands of employees; that it has been in effect for a number of years; that it apparently has worked well and satisfactorily, and that to strike down the requirement could create chaos in the administration of the Fund and might well obliterate its purposes.

■ It cannot be disputed that the Trustees had the authority and the duty to adopt eligibility requirements for Fund benefits which would be for the protection of the employees in the industry for whose benefit the Fund was established. The history of the requirement under consideration here, as established by the record in this case, primarily the deposition of Josephine Roche, a Trustee of the Fund, demonstrates that the requirement was adopted after a number of years of consideration and application, it being the determination that such a requirement was equitable and provided the minimum restriction for the intended beneficiaries of the Fund. Miss Roche testified that the requirement was considered the minimum necessary under the Taft-Hartley Act and "it gave the greatest liberality to the applicant."

■ That this interpretation of the requirement cannot be changed upon the basis of its application to a few scattered employees is well demonstrated by the fact that in the period from 1950 to 1964, the number of miners employed by the signatory employers in the bituminous coal industry decreased from 321,245 to 95,494 and the number of pensioners increased from 27,240 to 64,658. In other words, over this period of time, approximately 225,000 employees lost their status as employees of signatory operators, and it is not unreasonable to conclude that the addition of any substantial number of these men to eligibility under the pension fund might well have completely destroyed its usefulness. It is contended by the Trustees that the pensions in question, prior to qualification, are not vested rights, but expectancies, and termination of employee status with a contributing operator before qualification severs the right to pension benefits. This contention in the opinion of the court, is consistent with the Taft-Hartley Act and the Agreement made under the authority of the Act.

The record establishes that the challenged provision has been a requirement since the creation of the Fund, although not spelled out in precise language until the adoption of Resolution #50 in November, 1959. It is clear that the Trustees had only one motive and that was to provide benefits for the widest coverage without jeopardizing the integrity of the Fund. Certainly they could not and did not have any reason to discriminate prejudicially against any employees in the industry. Every purpose of the Fund was to provide for the employees' welfare. At the present time, the pension amounts to $115.00 per month, which is a modest amount, and payment of which should not be jeopardized.

As heretofore pointed out, from 1950 through 1964, the number of miners employed by signatory employers in the bituminous coal industry decreased from 321,245 to 95,494. The number of pensioners on the Fund rolls increased from 27,240 to 64,658. It appears that for the

period from 1953 to 1964, 312 applicants similarly situated to the three plaintiffs in this case were denied pensions on the basis of their failure to meet the requirement of employment with a signatory operator during their last year's employment. If the requirement should be held invalid, this would of necessity make those 312 former employees eligible for pension benefits retroactive to the time of their applications, which obviously would represent a substantial financial burden. But more significantly would be a consideration of the approximately 225,000 employees who ceased employment by signatory operators during the period from 1950 through 1964. There is nothing in the record to indicate how many of that number would become eligible. It would be a monumental task, probably an impossible one, to make an accurate determination. It is reasonable to conclude that a significant number would acquire pension benefits.

Counsel for the plaintiffs in their brief suggested that if all 312 are alive, the maximum cost to the Fund on a current basis would not exceed $430,000 per year. This sum alone, if extended to past years, might well constitute an impossible burden. This does not give any consideration to the number who would become eligible for pensions out of the 225,000 former employees.

A persuasive fact to support the reasonableness of the requirement is that many pension plans in other branches of industry are much more strict than the one here under consideration. The court's attention has been called to a number of such agreements in other industries where service with contributing employers immediately preceding application for retirement must be for longer periods than one year as required here. These provisions have not just happened. They are undoubtedly the product of many years of discussion and negotiation between employers, unions and other interested parties. They represent the contributions of many experts in a very delicate field of employer and employee relations.

In my opinion, all of this record amply shows that a reasonable relationship existed between the purposes of the Fund and the requirement that an employee's last regular employment be with a signatory operator.

The Court of Appeals pointed out that the burden is on the Trustees to show some rational nexus between the Fund's purpose and the requirement and "if such a nexus is shown, the Court's scrutiny is at an end. It is for the Trustees, not Judges, to choose between various reasonable alternatives." This court is of the opinion that the Trustees have shown a rational nexus between the Fund's purpose and the requirement under discussion and said requirement may not be held to be arbitrary and capricious.

Accordingly, the Trustees' motion for summary judgment will be granted and the plaintiffs' cross-motion for summary judgment will be denied.

Counsel for the Trustees will submit an Order consistent with this Memorandum.