**Horace Eugene BAYLES, Plaintiff,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant.**

**No. DC 78–16–S.**

United States District Court,
N. D. Mississippi,
Delta Division.

Nov. 3, 1978.

Robert G. Johnston, Alexander, Johnston & Alexander, Cleveland, Miss., for plaintiff.

Charles L. Sullivan, Sullivan, Smith, Hunt & Vickery, Clarksdale, Miss., Alan M. Levy, Goldberg, Previant & Uelmen, Milwaukee, Wis., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

Pursuant to the announcement made during the bench opinion rendered in the action sub judice on the submission thereof to the court, the following findings of fact and conclusions of law are adopted for the disposition of this litigation. The court reaffirms the findings of fact and conclusions of law stated in the bench opinion aforesaid and in addition thereto adopts the following findings.

## FINDINGS OF FACT

1. Plaintiff is eligible to receive early retirement pension benefits from Defendant Pension Fund pursuant to the terms and conditions of the Central States, Southeast and Southwest Areas Pension Plan. Plaintiff's application for that benefit was approved by the Trustees of the defendant Pension Fund in 1977, in the amount of $338.41 per month. However, plaintiff was told at that time, and repeatedly thereafter, that he could not receive that benefit while actively employed in the teamster industry, as defined in the aforementioned Pension Plan.

2. Plaintiff's eligibility for benefits from Defendant Pension Fund was based on his service as a truck driver employee. Because he had more than twenty years of such service, having satisfied all other requirements for eligibility, he was granted the aforementioned benefit.

3. The 1973 edition of the Central States, Southeast and Southwest Areas Pension Plan provided at Article III, Section 15, page 40:

"Re-employment in the Industry. A pensioner who retired prior to July 1, 1967 and who becomes re-employed or self-employed in the industry shall forfeit all right to benefit payments due on and after the first day of such employment. A pensioner who retires on or after July 1, 1967, and who becomes reemployed or self-employed in the industry in any classification that is covered by a Teamster agreement, either in the area in which he retired or in the area in which he becomes re-employed or self-employed, or who accepts employment as a supervisor of any employees within the classifications covered by a Teamster contract in either area as set forth above; or who accepts any other type of employment by a contributing employer to any Teamster Pension Plan which has a reciprocal agreement with this Plan, shall forfeit all rights to pension benefits due on or after the first day of such employment and during the period of such employment. If the employee again retires and reapplies for retirement benefit, and is otherwise qualified, subsequent benefit payments will begin on the first day of the calendar month which is more than ninety days after his subsequent retirement date. An employee who has received a disability benefit and who becomes re-employed or self-employed in the industry and has seniority reinstated will have his credited service at the time of disability reinstated reduced by the number of years of service used in determining the disability benefit."

The 1976 edition of the same Pension Plan, effective January 1, 1976, stated at Article IV, Section 14, page 17:

"Reemployment in the Teamster Industry. A Pensioner who secures employment in the same trade or craft in the Teamster industry within the same geographical area covered by the Pension Fund, as when his benefits commenced, shall have all future benefit payments suspended until he again retires and again applies for a pension benefit, in which event subsequent pension benefit payments shall be payable from the first day of the calendar month following the month of his subsequent date of Retirement. A Pensioner who, after Retirement and commencement of his pension benefit, returns to Covered Employment (as defined in Article III, § 2), shall have all future benefit payments suspended until he again retires and applies for a pension benefit, in which event subsequent pension benefit payments shall be payable from the first day of the calendar month following the month of his subsequent date of Retirement. If a Pensioner after Retirement has either returned to Covered Employment or secured employment in the Teamster industry as described in this section, before January 1, 1976, and he retires again on or after January 1, 1976, his pension benefits shall be determined in accordance with this Plan (as distinct from the predecessor Plan of the Pension Fund) if at the time of his subsequent Retirement a total of at least 250 weeks of contributions have been made or were required to have been made to the Pension Fund on his behalf. For the purposes of this Plan, self-employment in the Teamster industry shall not be considered as Reemployment in the Teamster industry and benefit payments shall not be suspended solely for this reason."

Covered employment (as related to plaintiff and was the basis for plaintiff's eligibility for benefits) was defined in the 1973 Pension Plan at Article I, Section 11A(1), page 33, as:

"A. Covered Employment prior to Effective Date shall mean:

(1) For any employee who became a member of the Plan prior to May 1, 1971—

(a) Employment within a classification of work and in an industry which was at the time of such employment normally covered by Teamster contracts in the local metropolitan area; and/or

(b) Employment in the same classification of work in which employed after the Effective Date under a Teamster contract and on which pension contributions have been made on behalf of the employee; and/or

(c) Employment requiring the usual Teamster skills in traditional Teamster industries at the time of such employment; and/or

(d) Employment by the union as herein provided; and/or

(e) Service in the armed forces of the United States under Selective Service or during a war or international police action if service was entered from covered employment as defined above."

The comparable provision in the 1976 Pension Plan is Article III, Section 2(b), page 4:

"(b) Any employment prior to January 1, 1976, and prior to the date an Employee first became a Participant of this Plan shall be considered Covered Employment if such employment meets one of the conditions as follows:

(1) Employment (but not more than 5 years if the Employee became a Participant between May 1, 1971, and December 31, 1975, inclusive, and not more than 2 years if the Employee became a Participant on or after January 1, 1976) within a classification of work and in an industry which was at the time of such employment normally covered by Teamster Collective Bargaining Agreements in the same geographical area; and/or

(2) Continuous past employment with an Employer in a classification of work prior to the date such Employer became a contributing Employer to the Pension Fund, if the Employee was employed by such Employer in the same

classification of work on the date such Employer became a contributing Employer to the Pension Fund; and/or (3) Employment which was covered by Teamster Collective Bargaining Agreements with his Employer at the time of such employment."

4. Plaintiff's employment history and wage earnings since he applied for benefits from Defendant Pension Fund in 1974, is as follows:

1974

| | |
|---|---|
| Spector Frt System, Chicago, Ill.—Wages | $ 6,806.20 |
| West Implement Co., Cleveland, Ms.—Wages | 9,882.50 |
| Eaton-Howard Mutual Funds | 13.20 |
| Bank of Cleveland—Interest | 291.31 |
| Cleveland State Bank—Interest | 191.59 |
| Ringle Express Credit Union—Interest | 30.66 |

1975

| | |
|---|---|
| West Implement—Wages | 24,937.68 |
| Eaton-Howard—Interest | 4.49 |
| U.S. Bonds—Interest | 374.61 |
| Bank of Cleveland—Interest | 273.59 |

1976

| | |
|---|---|
| West Implement—Wages | 23,502.84 |
| Eaton-Howard—Interest | 4.32 |
| Bank of Cleveland—Interest | 637.68 |
| Cleveland State Bank—Interest | 373.63 |

1977

| | |
|---|---|
| West Implement—Wages | 24,881.07 |
| Bank of Cleveland—Interest | 591.43 |
| Cleveland State Bank—Interest | 380.95 |

5. Plaintiff's application was initially denied on grounds not material to this lawsuit, and plaintiff exhausted his administrative remedies by appealing the denial to the Benefits Claims Appeal Committee and ultimately to the Board of Trustees of the defendant pension fund. On or about February 15, 1978, plaintiff's application was denied by the full Board of Trustees.

6. The sole reason for the denial by the defendant of plaintiff's application was and is his hereinafter described employment with West Implement Company and other than this, the plaintiff is in all things qualified to receive early retirement benefits from the defendant pension plan retroactive to July, 1974, in the amount of $338.41.

7. Shortly before filing his application for early retirement benefits, plaintiff ceased his employment as a truck driver with Spector Freight System of Chicago, Illinois, and plaintiff became a resident of Cleveland, Bolivar County, Mississippi, at which city he began employment with West Implement Company on or about July 1, 1974.

8. West Implement is a retail farm implement dealership located in Cleveland, Mississippi, and selling John Deere Farm implements in the general area of Cleveland, Mississippi. Since July 1, 1974, plaintiff has worked for no other employer.

9. West Implement is not now and has never been engaged in the trucking business, nor the drayage business, nor the cartage business, and it is not now a common carrier, has never been licensed as such, and has never engaged in hauling goods or merchandise for others, either intrastate or interstate, and its business is that of selling and servicing farm implements as a John Deere dealer.

10. Since July 1, 1974, plaintiff has been solely employed by West Implement Company, and he has hauled no goods for any concern other than West Implement Company, and has not driven a truck for any concern other than West Implement Company, and the farm implements that he has hauled have been solely those belonging to West Implement Company.

11. Sometime in either August or September, 1974, plaintiff surrendered his union membership and received a withdrawal card, and since that time has paid no union dues, has attended no union meetings, and has engaged in no union activities.

12. West Implement Company has never been covered by a teamster contract; West Implement Company has never contributed to a teamster pension plan; West Implement Company has never contributed to a teamster pension plan which has a reciprocal agreement with this Plan.

13. As a general rule and as a matter of common practice, farm equipment dealers in the geographical area covered by defendant plan are not parties to a teamster union contract.

14. Plaintiff's principal duties at West Implement were driving a truck to and from distant locations hauling farm implements. In addition, plaintiff performed some work changing oil for the truck, maintaining the tires, greasing and servicing the truck, and conducting similar minor maintenance duties. Plaintiff's rate of pay at West Implement was based on $.40 per mile and $3.20 per hour, with additional reimbursement for road expenses, such as meals and motel bills. When directly asked, plaintiff explained that he spent 90 per cent of his working time at West Implement driving a truck and that this has been true throughout his time at West Implement Company.

15. Defendant Pension Fund has never allowed payment of monthly benefits to a retired employee for a month in which he has worked as a truck driver employee, regardless whether such employment was for an employer party to a labor agreement with a teamster union or any other union. The Trustees of Defendant Pension Fund have always construed any work as a truck driver employee as employment in the teamster industry, and have both granted applicants service credits and benefits, and suspended retirees' monthly benefits, on that basis. To grant plaintiff the benefits he seeks here would constitute a special benefit to him never allowed to any other pensioner in Defendant Pension Fund.

16. The Defendant Pension Fund's actuary has relied upon the Defendant Pension Fund's uniform practice and policy prohibiting benefits to an individual actively employed as a truck driver in calculating the Defendant Pension Fund's costs of benefits and the contribution rates necessary to sustain those costs. Thus, if the rule prohibiting payment of benefits to a pensioner while he is actively employed is changed to allow such benefits, the Defendant Pension Fund would sustain an unanticipated cost.

17. On the basis of the foregoing, the Trustees of the Defendant Pension Fund treated plaintiff in a manner consistent with the rules of the Central States, Southeast and Southwest Areas Pension Plan, as well as with their practices and policies effective since the Plan's inception. Plaintiff was not treated in an arbitrary or capricious manner, but in a reasonable and appropriate manner in accordance with the published Pension Plan, which requires suspension of benefits to any pensioner while he is actively employed in the teamster industry, a prohibition which clearly applies to work as a truck driver employee for any employer.

## CONCLUSIONS OF LAW

18. This court has jurisdiction over this matter pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132, et seq., which governs the administration of all multi-employer pension funds like defendant.

19. Section 203(a)(3)(B) of ERISA, 29 U.S.C. § 1053(a)(3)(B), provides that:

"A right to an accrued benefit . . . shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits—

\* \* \* \* \* \*

"(ii) in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced."

20. The action of the Trustees of the Defendant Pension Fund in the administration of their Pension Plan must be sustained as a matter of law unless plaintiff can prove such activities arbitrary or capricious, *Marsh v. Greyhound Lines, Inc.,* (5th Cir. 1974) 488 F.2d 278; *Brune v. Morse,* (8th Cir. 1973) 475 F.2d 858; *Johnson v. Central States Pension Fund,* (10th Cir. 1975) 513 F.2d 1173; *Gaydosh v. Lewis,* 133 U.S.App.D.C. 274, 277 (1969) 410 F.2d 262, 265; *Miniard v. Lewis,* 128 U.S.App.D.C. 299 (1967) 387 F.2d 864; see also: *Giler v. Board of Sheet Metal Workers of Southern California,* (9th Cir. 1975) 509 F.2d 848.

21. When there is no factual controversy, the decision of the Trustees may

not be set aside unless it is clearly arbitrary and capricious, *Rehmar v. Smith* (9th Cir. 1976) 555 F.2d 1362, 1371; *Danti v. Lewis,* 114 U.S.App.D.C. 105 (1962) 312 F.2d 345, 349–350.

■ 22. The Trustees of Defendant Pension Fund may properly enforce Pension Plan rules limiting pension benefits if an alternative would require inappropriate or unanticipated costs to the Fund so as to potentially limit resources available to the proper beneficiaries of the trust, *Roark v. Lewis,* (D.D.C., 1969) 301 F.Supp. 526. Similarly, the Trustees may properly rely upon the advice of their actuaries in making such determinations.

23. The suspension of benefits to a retiree is a common device to maximize the assets of a pension fund by limiting such payments to those who are fully retired. This policy has been sanctioned by the Congress in the aforementioned provision of ERISA, and by the courts in the context of decisions sustaining the actions of trustees in denying payment of benefits to individuals who have retired under one program and then taken active employment from a different employer, *Pete v. United Mine Workers* (D.D.C., 1976) 1978 LC ¶ 11,339:

> "By denying benefits to class members who have found post-denial employment the Trustees in effect recognize that the Fund resources can better be used to benefit other eligible pensioners without employment. This is not a case where the Trustees have simply taken from one group and given to another with no valid reason. Rather, the group to whom the benefits are denied had another source of income for the period of suspended benefits. The validity of such a transferral of benefits cannot be characterized as irrational, arbitrary or capricious, and since it is a uniform policy of the Trustees, not simply a determination made in response to this litigation, its application to the class members is legal." *Id.,* at p. 20,598.

See also: *Hicks v. Pacific Maritime Association* (9th Cir., 1978) 567 F.2d 355.

24. Similarly, Defendant Pension Fund has been upheld in its application of the same policy. Where a pensioner receiving benefits from Defendant Pension Fund took employment as a truck driver employee of a municipality (not covered by or party to any labor agreement with any union), his pension benefit from Defendant Pension Fund was suspended pursuant to the same rules here in issue, and that action was sustained by the United States District Court for the Southern District of Indiana, *Oliveira v. Central States Pension Fund* (S.Ind., 1975) Docket No. EV 74–98–C.

## SUMMARY

■ 25. This court finds that plaintiff has retained employment as a truck driver employee in the teamster industry after the date of his retirement; that this employment warrants suspension of monthly pension benefits from Defendant Pension Fund while it continues, pursuant to Article III, Section 15, of the 1973 edition of the Central States, Southeast and Southwest Areas Pension Plan, as well as Article IV, Section 14 of the 1976 edition of that Pension Plan; and that the Trustees of the Defendant Pension Fund implemented that rule in a manner which was neither arbitrary or capricious, but must be sustained as a matter of law.

This action shall be dismissed in its entirety, without the award of costs to either party, and the clerk shall enter the appropriate judgment.