**Horace Eugene BAYLES, Plaintiff-Appellant,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant-Appellee.**

No. 78–3550
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Sept. 10, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Robert G. Johnston, Cleveland, Miss., for plaintiff-appellant.

Alan M. Levy, Milwaukee, Wis., Charles L. Sullivan, David R. Hunt, Clarksdale, Miss., for defendant-appellee.

Before AINSWORTH, GODBOLD and VANCE, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Horace Eugene Bayles brought this suit to compel payment of retirement benefits by appellee pension fund, an affiliate of the Teamsters Union. Jurisdiction is grounded on Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 (1975). After trial to the court, judgment was rendered in favor of appellee pension fund. We affirm.

The facts are undisputed. For more than twenty years, appellant worked as a bus and truck driver. For at least four of those years, while driving a bus for Greyhound, appellant received credit toward his pension even though he was not a member of the Teamsters Union during that time. For nine years, he was employed as a truck driver by Ringle Express, a common carrier, where his duties were to deliver farm machinery from factory to dealer.

In June 1974, appellant quit his current employment as a driver for Spector Freight System, withdrew from the Teamsters Union, and applied for early retirement benefits. Soon thereafter, he began working as a truck driver for West Implement Company in Cleveland, Mississippi, a distributor of John Deere farm equipment. West is not a

common carrier and has never engaged in the trucking business. Appellant's duties at West consist of hauling merchandise from the factory to the dealership. Although appellant's duties at West are virtually identical to those performed while employed by Ringle Express, West does not have a collective bargaining agreement with the Teamsters or any other union. No farm implement dealers in the State of Mississippi such as West are covered by Teamster contracts.

Based upon Article III, Section 15 of the 1973 pension plan rules, appellant was denied early retirement benefits. Section 15 provides that a pensioner forfeits his rights to pension benefits if he becomes reemployed or self-employed "in the industry in any classification that is covered by a Teamster agreement, either in the area in which he becomes re-employed or self-employed." (The full text of this section is set forth in the margin.)[1] The fund's trustees have consistently construed this provision as warranting suspension of benefits to any retiree who returns to truck driving employment, regardless of whether the employer has a contract with the Teamsters Union. Since 1968, the trustees have suspended benefits to some 238 pensioners who went back to work as truck drivers. Approximately one-third of those persons held positions with employers who had no union contract. Similarly, as illustrated by their treatment of appellant's years of employ-

ment with Greyhound, the trustees do not make union membership or employment under a Teamster contract a requirement for earning the service credits necessary to receive a pension. Appellee's actuaries estimated that it would cost the fund over $750,000 annually to reinstate benefits for the 238 persons whose pensions have been suspended.

Appellant argues that Section 15 must be interpreted to mean that a pensioner forfeits his right to benefits only when he is reemployed in a job actually covered by a Teamster collective bargaining agreement, or when his new job is in a classification which is generally covered by a Teamster agreement. Contending that the section is at least "ambiguous," appellant Bayles relies on several state court decisions[2] strictly construing ambiguities in pension plans against the employer to support his conclusion that his interpretation must prevail over that of the plan's trustees.

█ Appellant Bayles has, however, misconstrued the standard of review applicable to this case. According to the clear weight of federal authority, the actions of the trustees in the administration of the pension plan must be sustained as a matter of law unless plaintiff can prove such activities have been arbitrary or capricious. *Bueneman v. Central States, Southeast & Southwest Areas Pension Fund*, 8 Cir., 1978, 572 F.2d 1208; *Rehmar v. Smith*, 9 Cir., 1976,

---

1. Re-employment in the Industry. A pensioner who retired prior to July 1, 1967 and who becomes re-employed or self-employed in the industry shall forfeit all right to benefit payments due on and after the first day of such employment. A pensioner who retires on or after July 1, 1967 and who becomes re-employed or self-employed in the industry in any classification that is covered by a Teamster agreement, either in the area in which he retired or in the area in which he becomes re-employed or self-employed, or who accepts employment as a supervisor of any employees within the classifications covered by a Teamster contract in either area as set forth above; or who accepts any other type of employment by a contributing employer to any Teamster Pension Plan which has a reciprocal agreement with this Plan, shall forfeit all rights to pension benefits due on or after the first day of such

employment and during the period of such employment.

If the employee again retires and reapplies for retirement benefit, and is otherwise qualified, subsequent benefit payments will begin on the first day of the calendar month which is more than ninety days after his subsequent retirement date. An employee who has received a disability benefit and who becomes re-employed or self-employed in the industry and has seniority reinstated will have his credited service at the time of disability reinstated reduced by the number of years of service used in determining the disability benefit.

2. *See e.g., Paddock Pool Construction Co. v. Monseur*, 23 Ariz.App. 451, 533 P.2d 1188 (1975); *Sigman v. Rudolph Wurlitzer Co.*, 57 Ohio App. 4, 11 N.E.2d 878 (1937); *Forrish v. Kennedy*, 377 Pa. 370, 105 A.2d 67 (1954).

555 F.2d 1362; *Johnson v. Central States Pension Fund*, 10 Cir., 1975, 513 F.2d 1173; *Giler v. Board of Sheet Metal Workers of So. California*, 9 Cir., 1975, 509 F.2d 848; *Brune v. Morse*, 8 Cir., 1973, 475 F.2d 858; *Gaydosh v. Lewis*, 1969, 133 U.S.App.D.C. 274, 410 F.2d 262; *Miniard v. Lewis*, 1967, 128 U.S.App.D.C. 299, 387 F.2d 864; *Danti v. Lewis*, 1962, 114 U.S.App.D.C. 105, 312 F.2d 345.[3]

To protect the rights of pensioners, courts have found it necessary to subject the conduct of pension plan trustees to judicial review and correction. *See Kosty v. Lewis*, 1963, 115 U.S.App.D.C. 343, 346, 319 F.2d 744, 747. However, where fiduciaries are granted broad discretion, as is generally the case with the trustees of pension trusts, courts generally limit their review and intervene in the fiduciaries' decisions only where "they have acted arbitrarily or capriciously towards one of the persons to whom their trust obligations run." *Id.* "We find this standard of judicial review, which leads neither to abdication of traditional judicial control of fiduciaries nor to excessive judicial intervention in trust operations, in harmony with federal labor policy." *Rehmar v. Smith*, 9 Cir., 1976, 555 F.2d 1362, 1371.

■ Applying the "arbitrary and capricious" standard of review to this case, it is clear that the district court did not err by ruling in the trustees' favor. The evidence conclusively established that the trustees have uniformly construed any work as a truck driver as employment in the teamster industry and have granted service credits or suspended benefits based on that construction. Appellant was not treated differently from any of the other 238 reemployed truck drivers whose pensions were suspended.

Nor has appellant shown that the trustees' interpretation of Article III, Section 15 is unreasonable or arbitrary. A fair reading of the provision reveals that its language is intended to cover any pensioner who is employed in a job classification that is normally covered by Teamster contracts.[4] In fact, adopting appellant's argument that a reemployed pensioner loses benefits only if his new job is actually covered by a union contract would render meaningless Section 15's reference to self-employed pensioners.

■ Finally, the appellee pension fund's actuary has relied upon the trustees' uniform practice of denying benefits to an individual actively employed as a truck driver in calculating the pension fund's costs of benefits and the contribution rates necessary to sustain those costs. Thus, if the rule prohibiting payment of benefits to an actively employed pensioner is changed to allow such benefits, the pension fund would sustain an unanticipated cost which could exceed $750,000 annually. The trustees of appellee pension fund may properly enforce pension plan rules limiting pension benefits if an alternative would require inappropriate or unanticipated costs to the fund so as to potentially limit resources available to the proper beneficiaries of the trust. *Roark v. Lewis*, D.D.C., 1969, 301 F.Supp. 526.

AFFIRMED.

---

3. Appellant's cause of action, as previously noted, arises under the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1975). At least one circuit has expressly held that the "arbitrary and capricious" standard of review is applicable to cases arising under ERISA. *Bueneman v. Central States, Southeast & Southwest Areas Pension Fund*, 8 Cir., 1978, 572 F.2d 1208. *See also Phillips v. Kennedy*, 8 Cir., 1976, 542 F.2d 52; *Maness v. Williams*, 8 Cir., 1975, 513 F.2d 1264.

4. The 1976 version of the pension plan may better reflect Section 15's intent and scope. It provides that a "pensioner who secures employment in the same trade or craft in the Teamster industry . . . shall have all future benefits suspended until he again retires. . . ." However, Article I, Section 11A(1) of the 1973 pension plan, the version of the plan controlling this dispute, further confirms the trustees' reading of Section 15. Section 11A(1), which defines "covered employment," provides that employment "within a classification of work and in an industry which was at the time of such employment normally covered by Teamster contracts" or "employment requiring the usual Teamster skills in traditional Teamster industries" establishes eligibility for benefits under the plan. If such employment establishes eligibility under the plan, the trustees of the plan could rationally conclude that similar reemployment is sufficient to suspend the pension rights of reemployed pensioners.