Albert E. MORROW, Jr.

v.

The NATIONAL MARITIME UNION OF AMERICA & The Employment Review Board of the National Maritime Union of America.

Civ. A. No. G–87–158.

United States District Court, S.D. Texas, Galveston Division.

Nov. 30, 1988.

Gerson Bloom, Galveston, Tex., for plaintiff.

Richard L. Melancon, Schechter & Eisenman, Galveston, Tex., Ned R. Phillips, Phillips & Cappiello, P.C., New York City, for defendants.

MEMORANDUM OPINION & ORDER

HUGH GIBSON, District Judge.

Before the Court are cross-motions for summary judgment. Since the parties previously stipulated there were no material fact issues to be decided, the Court will render judgment on the basis of the information before it. Having considered the pleadings, cross-motions, responses, re-

---

plies, supplemental briefs, all information attached thereto, and the applicable law, the Court finds the defendants motion for summary judgment should be and hereby is GRANTED.

### FACTS

In the *fall* of 1954, Albert Morrow, plaintiff, became a member of defendant National Maritime Union of America (NMU or the Union) and engaged in employment which was covered by the NMU Pension and Welfare Plan Regulations. It was under these regulations that Morrow attained what is commonly referred to as Group I registration status.[1] Some thirty years later in March 1984, Morrow applied with the Union for pension benefits. As a requirement for obtaining those benefits, Morrow executed a "Retirement Declaration" which reads in part as follows:

1. After the date shown above (June 13, 1983), I will not engage in any unlicensed employment aboard any vessel covered by any collective bargaining agreement of the Union....

3. I recognize that if I enter such employment, my benefits will be suspended in accordance with the provisions of the Pension Regulations....

█ Morrow retired on April 1, 1984, and began receiving $375.00 in pension benefits. On January 28, 1985, Morrow decided to register for employment at the Union's hiring hall[2] and was granted Group I status.[3] In May 1986, Morrow was advised by the Union's Employment Review Board (ERB) that under Rule 1(d) of the National Shipping Rules, he was not eligible for Group I status because he was still receiving pension benefits.[4] Morrow contends that because he took retirement under the 1982 Rules, the 1986 Rules are not applicable. Morrow further believes that under the 1982 version of Rule 1(d),[5] he can reen-

---

**1.** Group I status is the highest of three different employment classifications that an unlicensed seaman can achieve. The classification system is intended to provide seamen with a prioritized and organized method of obtaining employment.

A seaman attains Group I status by working 600 days in qualified employment within a five-year calendar period, which averages out to 120 days per year. Once attained, however, a seaman need only work an average of 66.67 days per year, or 200 days per three-calendar year period in order to retain his Group I status. *See infra* note 4.

**2.** The Retirement Declaration requires a retiree to give notice to the pension's administrators if he accepts employment as a seaman. *See* Retirement Declaration at ¶ 2. Since Morrow was only registered for employment, rather than having accepted employment, it was still permissible for Morrow to receive his pension benefits.

**3.** Group I status is granted on a calendar year basis. Employment records are updated at the end of the calendar year and the compilation of those records are published in an employment "book," which is released on or about March of each year.

Since Morrow re-registered before the 1985 book was available, the Union granted Morrow Group I status on the basis of the employment figures contained in the 1984 book. Technically, however, Morrow's Group I status had lapsed as of January 1, 1985. Nevertheless, the Union allowed Morrow to keep his Group I status through the 1985 calendar year.

Apparently, the Union thought Morrow was going to give up his pension benefits while he remained registered and available for employment. Instead, Morrow continued to receive his pension check and sought to retain his Group I status at the same time. Thereafter, this lawsuit ensued.

**4.** The National Shipping Rules were amended effective January 1, 1986. Rule 1(d) reads in pertinent part as follows:

An unlicensed seaman classified in Group I will lose such status unless he has been employed as an unlicensed seaman for at least two hundred (200) days during the previous three calendar year period on ocean going vessels by employers having a contract with the Union.... This rule is not applicable to any seaman who has fifteen (15) years of previous credit who has not become a pensioner so long as he or she remains continuously registered and available for employment.

**5.** The 1982 version of Rule 1(d) reads in pertinent part as follows:

An unlicensed seaman classified in Group I will lose such status unless he has been employed as an unlicensed seaman for at least three hundred (300) days during the previous three calendar year period on ocean going vessels by employers having a contract with the Union.... This rule shall not be applicable to any seaman eligible for a Regular Pension as defined by the NMU Pension Regulations so long as they continue to be registered and available for employment....

ter the work force with Group I status and continue to receive his monthly pension check until such time that he actually accepts employment by shipping out. Thus, Morrow contends that the ERB wrongfully and retroactively applied the 1986 Rules to deny him Group I status.[6] In response, the ERB contends that the 1986 amendment was a rewording for the sake of clarity, and that no substantive change was intended. The ERB further contends that regardless of which version is used, the result should be the same—a denial of Morrow's Group I status.[7]

The Court agrees with Morrow that because he took retirement before the 1986 Rules became effective, and because he continues to be retired, it would be improper for the Union to apply the 1986 Rules to deny him Group I status, so long as he would have had Group I status under the 1982 Rules. The problem, however, is that the Court does not share Morrow's liberal interpretation of the 1982 Rules. The reasons are two-fold. First, Morrow misconstrues the standard of review that is applicable to an ERB decision. Second, the Court agrees with the Union that the 1982 Rules would not permit Morrow to simultaneously receive pension benefits and remain registered for employment under Group I status.

## THE STANDARD OF REVIEW

In support of his argument that this Court should overturn the ERB's decision,

Morrow cites 29 U.S.C. § 1022(a)(1) of the ERISA statute for the proposition that the appropriate standard of review of an ERB decision is how an average person would reasonably interpret Rule 1(d).[8] Morrow's perception reflects a clear misunderstanding of his *prima facie* burden of proof and the ERB's function in the employment process of seamen.

The ERB was formed pursuant to a collective bargaining agreement and is staffed with eight people. Four members are chosen by the Union, and four members are chosen by the companies under contract with the Union.[9] The Board's essential purpose is to maintain an "adequate and well balanced reserve of competent and dependable seamen."[10] Consistent with that purpose, the Board is charged with and responsible for setting forth the criteria necessary to obtain and retain Group I status.[11] Thus, the Board acts very much like a governmental agency in that it has broad administrative powers to promulgate and interpret rules and regulations for obtaining and retaining Group I status.

■ Since the ERB's powers are analogous to a governmental agency, the Court believes the appropriate standard of review of an ERB decision should be the same standard used under the Administrative Procedure Act[12] for the review of a governmental agency.[13] Accordingly, this

---

**6.** Morrow also asserts that the Union wrongfully denied him medical coverage for a cataract operation. This claim must be dismissed because Morrow does not plead or prove any facts that would support the legal elements of his claim. Accordingly, *Celotex Corp. v. Catrett* mandates that summary judgment be granted as to this particular claim. 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986).

**7.** The only substantive change intended by the 1986 amendment was the 300–day to 200–day reduction in the number of work days required per three calendar year period. The ERB reduced the work requirements because of shrinking employment opportunities for seamen. The idea was to "make it easier for a seaman to remain in Group I status," *see* Summary of Changes and Explanations to the 1986 National Shipping Rules, because the ERB has the responsibility to make sure there is an "adequate and well balanced reserve of competent and

dependable seamen." Collective Bargaining Agreement, art. 1, § 8.

**8.** ERISA does not apply to the facts of this case because Morrow has never been denied his retirement benefits. Yet, even if ERISA did apply, the standard of review of a denial of benefits is whether the decision of the pension administrators was arbitrary and capricious. *Denton v. First Nat'l Bank,* 765 F.2d 1295, 1300, 1303 (5th Cir.1985).

**9.** Collective Bargaining Agreement, art. 1, § 8.

**10.** *Id.*

**11.** *Id.* at § 8A(b).

**12.** 5 U.S.C. §§ 551–576, 701–706.

**13.** 5 U.S.C. § 706(2)(A).

Court's power to set aside or intervene in decisions of the ERB is limited to those situations where the ERB's actions were arbitrary and capricious.[14] The Court finds such a standard in harmony with the federal labor policy of avoiding excessive judicial intervention in the decision making processes of an employment review board.[15] Otherwise, every ERB action that was disfavorable to a seaman would turn into a federal case.[16]

■ In applying the "arbitrary and capricious" standard of review to the case *sub judice*, it is clear that the ERB's interpretation of the 1982 version of Rule 1(d) is both reasonable and consistent with its responsibility that the hiring hall process be an equitable process. The ERB asserts that the 1982 version of Rule 1(d) was changed in 1986 to more clearly effectuate its intent that a seaman on pension and re-entering the work force should not have a hiring advantage over other Group I seamen who have not yet become pensioners. The ERB seeks to prevent seamen like Morrow from using their pension as a form of unemployment compensation. Morrow wants a guaranteed income and the opportunity to be more selective about the nature of the work he will accept, should he decide to accept work. Such a position is unreasonable because it gives Morrow a tremendous advantage over nonpension seamen who lack this alternative source of income, and who are forced to compete against each other for limited employment opportunities.

Another factor to consider is the ERB's assertion that it has always narrowly construed Rule 1(d). While the 1982 version of the Rule may not have been a model of clarity, this Court may not substitute its judgment for that of the ERB.[17] The reason is because the ERB has shown a rational basis for its decision.[18] Accordingly, absent a clear error in judgment or a showing of disparate application of the Rule, this Court must defer to the ERB's rational interpretation.[19]

Morrow's argument also fails for another reason. There is an important difference between being *eligible for a pension* versus being *on a pension*. In other words, the moment Morrow went on pension, he no longer satisfied the requirement that he be eligible for a pension. One cannot simultaneously be on pension and eligible for pension. The result is that when Morrow went on pension, he fell outside of Rule 1(d)'s exception that he work a certain number of days within a three calendar year period in order to retain his Group I status.[20] Since Morrow did not work at all during the 1984 or 1985 calendar years, his Group I status properly lapsed as of Janu-

---

**14.** An explanation of the scope of review under the arbitrary and capricious standard can be found in *Bowman Transp. Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). In *Bowman,* the Supreme Court stated the scope of review is a narrow one. "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... The court is not empowered to substitute its judgment for that of the agency.'" *Id.* at 285, 95 S.Ct. at 442 (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)). "The agency must articulate a 'rational connection between the facts found and the choice made.'" *Bowman,* 419 U.S. at 285, 95 S.Ct. at 442 (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962)). "While we may not supply a reasoned basis for the agency's action that the agency itself has not given, *Bowman,* 419 U.S. at 285–86, 95 S.Ct. at 442 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)), we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman,* 419 U.S. at 286, 95 S.Ct. at 442 (citing *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206 (1945)).

**15.** *See Bayles v. Central States, Southeast & Southwest Areas Pension Fund,* 602 F.2d 97, 100 (5th Cir.1979). Although *Bayles* is an ERISA pension case, its facts and analysis are applicable to this case.

**16.** *Denton,* 765 F.2d at 1300. Although *Denton* dealt with an ERISA action, the policy reasons stated in *Denton* are equally applicable to an ERB action.

**17.** *Bowman,* 419 U.S. at 285, 95 S.Ct. at 441.

**18.** *Id.*

**19.** *Id.*

**20.** *See supra* note 4.

ary 1, 1986.[21] Therefore, even under the 1982 version of Rule 1(d), the ERB's decision would not be arbitrary and capricious. In fact, the decision was a correct one.

## ORDER

For all of the above reasons, it is, therefore, ORDERED, ADJUDGED, and DECREED that the defendants motion for summary judgment is GRANTED. This case is DISMISSED.

---

**21.** Once Morrow lost his Group I status, the only way he could regain it would be under the six hundred hour rule. See note 1 and accompanying text. Since Morrow had 180 days of employment in 1981, 168 days in 1982, 68 days in 1983, and no days in 1984 or 1985, for a total of 416 days of registered employment, Morrow failed to requalify for Group I status.