KING, Circuit Judge:
HECI Exploration Company Employees’ Profit Sharing Plan appeals from the district court’s affirmance of a bankruptcy court’s final judgment that Pat S. Holloway, as a qualified participant in the Plan who had not waived his right to participate, was entitled to receive his interest in the Plan. Finding no reversible error in the district court’s decision, we affirm.
I.
The facts and procedural background of this case are set forth in detail in the district court’s opinion below. See Holloway v. HECI Explor. Co. Employee’s Profit Sharing Plan (In re HECI), 76 B.R. 563, 564-67 (N.D.Tex.1987). Pat S. Holloway (“Holloway”) was president, chief executive, and sole active officer of HECI *515 Exploration Company, Inc. (“HECI”)[1] from that company’s inception in 1974 until Holloway was terminated by order of a Texas state court in July, 1982.[2] HECI was formed to engage in the exploration and development of oil and gas properties. In 1978, at the suggestion of one of HECI’s major investors, Holloway decided to establish the HECI Exploration Company Employees’ Profit Sharing Plan (“the Plan”) in order to boost employee morale. The Plan was to be funded with overriding royalty interests in four of the oil prospects that HECI was engaged in drilling and developing. In 1978 and early 1979, Holloway caused assignments of those overriding royalty interests to be made to the Plan as well as to himself, his then-wife, and his children. HECI’s treasurer, Dean Johnson (“Johnson”), and Holloway acted as co-trustees of the Plan. On November 19, 1979, both HECI and Holloway, individually, filed voluntary Chapter 11 bankruptcy petitions. The HECI case was later converted to Chapter 7.
Holloway and Johnson continued to serve as co-trustees of the Plan until Holloway’s employment was terminated. In June 1984, Johnson proposed to make a partial distribution of plan benefits to terminated employees, subject to approval by the bankruptcy court. Holloway was not included in the list of proposed distributees. Upon receiving the list, Holloway sent a note to Johnson, asking was being excluded. No further communication about Holloway’s exclusion from the distribution was made, and the funds were ultimately distributed.
Holloway proceeded to file an ERISA action in Texas state court.[3] Holloway sought to recover from the Plan benefits allegedly due him as a Plan participant and to obtain a declaration that he was entitled to future Plan benefits. By the time of the suit, HECI was acting Plan administrator. Acting through Don Navarro (“Navarro”), HECI’s trustee in bankruptcy — who, curiously enough, was also the trustee in bankruptcy of Holloway’s estate[4] — HECI intervened in the state court action, removing it to the United States Bankruptcy Court for the Northern District of Texas for consolidation with HECI’s Chapter 7 proceeding.
Before trial, a question arose concerning the bankruptcy court’s jurisdiction to hear the matter. The bankruptcy court ultimately concluded that Holloway’s suit was a “related” proceeding (as opposed to a “core” proceeding) and found that jurisdiction was proper. At the close of trial, the bankruptcy court announced findings of fact and conclusions of law with respect to Holloway’s claim (not, as would have been consistent with “related to” jurisdiction, proposed findings of fact and conclusions of law). See In re HECI, 76 B.R. at 566. *516 In addition, the bankruptcy court reserved the right to change or add to its holdings and urged the parties “to submit proposed orders and proposed findings of fact and conclusions of law.” The parties did so, and the bankruptcy court subsequently entered in writing amended findings and conclusions. Although the bankruptcy court’s first conclusion of law was that it had “jurisdiction over the parties and the subject matter of this adversary proceeding ... as a ‘related’ proceeding,” it nevertheless entered a final judgment.
In that judgment, the bankruptcy court held that Holloway was a qualified participant in the Plan and, as a result, was entitled to receive his interest in the Plan; the only exception, the court found, was that Holloway had waived his right to share in the Plan’s June 1984 distribution. The bankruptcy court’s decision was based on its finding that Holloway, as a HECI employee, was automatically a Plan participant and that Article III, section 8.01 of the Plan required that a participant give written notice of his election not to participate in the Plan. Holloway had never given written notice of any election not to participate in the Plan to the Plan administrator; consequently, the bankruptcy court held that Holloway never excluded himself or withdrew from the Plan. With respect to the bankruptcy court’s finding that Holloway waived his right to participate in the June 1984 distribution, the court reasoned that a “limited waiver” was demonstrated because at the time of the distribution, Holloway was a Plan co-trustee, failed to object to the notice of distribution sent to him, and did not solicit the bankruptcy court’s aid to stop the distribution.
The Plan filed timely notice of appeal from the bankruptcy court’s decision. In the district court proceeding, the parties raised the question of whether a bankruptcy court, in a proceeding it had determined to be a related proceeding rather than a core proceeding, had the authority to enter findings of fact, conclusions of law and a final judgment, or whether it had the authority only to enter proposed findings and conclusions subject to de novo review by the district court. See id. The district court remanded the case to the bankruptcy court for the limited purpose of having that court clarify its conclusion of law that the proceeding was related. In compliance with that limited remand, the bankruptcy court filed an order setting forth its basis for entering a final judgment. In that order, the bankruptcy court noted that at the inception of trial, it had concluded that the proceeding was related but had inadvertently failed to enter proposed findings and conclusions. The bankruptcy court went on to conclude, as a matter of law: (1) that the adversary proceeding was related; (2) that the Plan, by failing to contest the right of the bankruptcy court to sign a judgment, consented to the bankruptcy court’s entry of findings, conclusions, and a final judgment pursuant to 28 U.S.C., § 157(c)(2); and (3) that the Plan impliedly waived its right to object to the jurisdiction of the bankruptcy court and that court’s subsequent entry of findings, conclusions, and a judgment.
The district court independently reviewed the nature of the bankruptcy court’s jurisdiction and found, as the bankruptcy court had announced, that Holloway’s action was a related proceeding as opposed to a core proceeding. Therefore, the Plan was correct that the bankruptcy court should only have proposed findings of fact and conclusions of law. The district court found, however, that by its actions at the post-trial stage, the Plan had indeed waived its right to have an Article III judge make an initial determination of the facts. Consequently, the district court approached the merits of the case as an appellate court rather than as a trier of fact. Neither party appeals the issues (“related” jurisdiction and waiver of the right to have the district court review the bankruptcy court’s findings de novo) which the district court decided prior to addressing the merits of the Plan’s appeal, and we do not consider them.
The district court began its examination of the merits by noting that the parties (both in the bankruptcy court and on appeal to the district court) and the bankruptcy court had determined Holloway’s rights under the Texas state law of waiver when *517 Holloway’s ERISA action to recover benefits and to obtain declaratory relief should have been governed by federal substantive law. Federal law provides that the actions of a trustee in the administration of an employee benefit plan must be sustained as a matter of law unless the plaintiff can demonstrate that those actions were arbitrary or capricious. Dennard v. Richards Group, Inc., 681 F.2d 306, 313 (5th Cir.1982); Ganze v. Dart Indus. Inc., 741 F.2d 790 (5th Cir.1984); Bayles v. Central States, Southeast and Southwest Areas Pension Fund, 602 F.2d 97, 99 & 100 n. 3 (5th Cir.1979).
For two reasons, however, the district court refused to correct the error at such an advanced state of the proceedings. First, the district court noted that “[wjhere an issue is not raised in the trial court or in the appellate court briefs or at oral argument, the appellate court will not address it.” In re HECI, 76 B.R. at 572 (citing Domed Stadium Hotel, Inc. v. Holiday Inns, Inc., 732 F.2d 480, 488 n. 7 (5th Cir.1984)). Therefore, by failing to argue the correct standard, the Plan waived any error committed by the bankruptcy court in applying Texas law rather than federal law. Second, the district court explained— relying on the Seventh Circuit’s decision in Casio, Inc. v. S.M. & R. Co., 755 F.2d 528, 531 (7th Cir.1985) — that parties can, within broad limits, stipulate the substantive law to be applied to their dispute and can, by not objecting to the trial court’s application of the substantive law to their dispute, be deemed to have so stipulated to its application. In re HECI, 76 B.R. at 572. There-the bankruptcy court’s application of Texas law to the dispute, the bankruptcy court’s error was immaterial. The district court proceeded to review the merits of the bankruptcy court’s decision under Texas law.
First, the district court explained that the issue of whether Holloway was estopped from claiming participation in or benefits under the Plan was not properly presented for appeal because it was not briefed by the parties. Id. at 572 n. 15 (citing McGruder v. Necaise, 733 F.2d 1146, 1148 (5th Cir.1984) (appellate court will not consider matters which are not briefed)). Therefore, the district court declined to consider whether estoppel applied. Second, the district court concluded that under a clearly erroneous standard of review, the bankruptcy court did not err in finding that Holloway was covered by, and that he had not waived his right to participate in, the Plan.[5] The Plan filed timely notice of appeal from the district court’s decision.
II.
The Plan takes issue with the district court’s ruling in several respects. The Plan argues that the district court erred in ruling, as a matter of law, that the Plan had waived the application of the federal law “arbitrary or capricious” standard of review to the actions of the Plan administrator in this case. The Plan further contends that when viewed under the proper standard of review, the actions of the Plan administrator were neither arbitrary nor *518 capricious. .In the event we determine that the Plan did indeed waive any argument that federal law should apply to the dispute, the Plan asks us to find that the district court abused its discretion in concluding that the bankruptcy court’s finding that Holloway did not waive his right to participate in the Plan was not clearly erroneous. The Plan contends that the district court ignored Holloway’s status as a Plan co-trustee; the Plan maintains that because Holloway bore a fiduciary duty to the Plan, his “fence-straddling” actions must be viewed in a harsher light. The Plan also disagrees with the district court’s finding that the Plan, by failing to brief or argue the issue, waived its right to argue that Holloway was estopped from claiming rights in the Plan. Finally, the Plan goes on to argue that Holloway’s “fence straddling” estopped him from seeking benefits from the Plan under Texas state law and that the bankruptcy court’s conclusion to the contrary was clearly erroneous. We will address each of these issues in turn.

A. Standard of Review

In this particular case, we are reviewing the decision of the district court in its capacity as an appellate court. Several different standards of review govern our decision, depending on the nature of the holdings reviewed. Where the disputed holding involves a matter that is within the district court’s discretion, we will affirm the judgment of a district court acting in its appellate role unless the court has clearly abused its discretion. Lama Drilling Co. v. Latham Exploration Co., 832 F.2d 1391 (5th Cir.1987); In re Braniff Airways, 774 F.2d 1303, 1305 (5th Cir.1985).
Where we are asked to review the bankruptcy court’s findings of fact that have been affirmed by the district court, the clearly erroneous rule will be strictly applied. In re Missionary Baptist Foundation of America, 818 F.2d 1135, 1142 (5th Cir.1987). The district court’s conclusions of law are, however, freely reviewable on appeal. Id.
For the reasons set forth below, we find no reversible error in the district court’s decision upholding the bankruptcy court’s finding that Holloway was a participant in the Plan and that Holloway did not waive his rights under the Plan.[6]

B. Federal or State Law?

The Plan argues for the first time on appeal that its denial of Holloway’s claim for benefits should have been evaluated under federal law which provides that the decision of a plan administrator will be upheld unless the decision is arbitrary or capricious. Dennard, 681 F.2d at 313; Ganze, 741 F.2d at 792-93; Bayles, 602 F.2d at 99 & 100 n. 3. The Plan’s contention presents two separate questions: First, whether the district court erred in holding that the Plan waived application of federal law by failing to raise it at any point in the proceedings and second, whether this court should consider the federal law issue, raised for the first time on this second level of appeal.[7]
*519 The Plan contends that the district court, having raised sua sponte the issue of federal law, erred in holding that the Plan waived application of the federal law standard.
As noted above, the district court held that the Plan waived application of the federal law standard by failing to argue it in the trial court or to raise it on appeal in the district court and because parties may, within broad limits, stipulate the substantive law to be applied to their case. 76 B.R. at 572. The district court reasoned that the failure of the parties to object to the application of Texas state law was equivalent to a stipulation that the case should be decided under state law. Id.
We first consider whether the district court abused its discretion in concluding that the Plan waived application of the federal law standard by failing to raise it.
The Plan now responds that the district court was unduly rigid in its application of the principle that a party waives consideration of an issue by failing to argue it.
The Plan correctly notes that the Supreme Court has refused to announce a general rule regarding the waiver of issues not raised in the trial court. Wulff, 428 U.S. at 121, 96 S.Ct. at 2877. However, as the Plan itself states, the Supreme Court also held that “[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.” Id. Because the decision whether to entertain an argument not raised in the trial court is within the discretion of the appellate court (in this case, the district court acting as an appellate court),[8] our proper role is not to substitute our judgment for that of the district court, but to consider whether it abused its discretion in concluding that the Plan waived application of the standard and in declining to apply the standard after raising the issue sua sponte. See Braniff Airways, 774 F.2d at 1305.
In light of ERISA’s broad preemption of state law,[9] it may have been desirable for the district court to remand the case to the bankruptcy court, or to request briefs from the parties on the federal law issue. We note, however, that the authority in this circuit does not provide clear direction to a court presented with this dilemma.
*520 In Hayden v. Texas-U.S. Chemical Co., 681 F.2d 1053 (5th Cir.1982), we remanded the case to the district court to consider the application of ERISA even though the plaintiff first raised his claim for relief under ERISA at trial (thus giving the defendant no notice of the argument). Noting that ERISA was intended to displace otherwise governing state law, we concluded that the plaintiffs “claim to relief under ERISA does not state merely an alternative theoretical formulation of his cause which may fairly be disallowed if late presented.” Id. at 1056.
Conversely, in Dueringer v. General American Life Insurance Co., 842 F.2d 127 (5th Cir.1988), we held that the defendant waived its right to argue ERISA preemption as an affirmative defense to the plaintiffs state law breach of contract action by failing to raise the issue below. Relying on two Ninth Circuit cases, we concluded that a preemption defense may be waived when availability of the defense affects not the forum in which the case is to be heard, but the law which is to govern resolution of the claim.[10] Id. at 130 (citing Johnson v. Armored Transp. of California, Inc., 813 F.2d 1041, 1043-44 (9th Cir.1986) (waiver of preemption defense under the LMRA); Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1497 (9th Cir.1986) (same)).
The conflicting results in these two cases illustrate that there is a lack of clarity as to the proper course of action to be pursued when a party fails to notice or to argue federal law in a federally preempted area.[11] The facts of this case are, moreover, unique. This is not a classic preemption case in which the defendant argues that the plaintiff has erroneously characterized a federal cause of action as a state law claim. As explained more fully below, the Plan’s present dilemma is entirely of its own making: The Plan essentially argues that its own state law defense should have been preempted by federal law. Under the circumstances, we cannot conclude that the district court abused its discretion in holding that the Plan waived application of federal law.[12]
*521 We do not, however, endorse the district court’s dicta which implies that parties may stipulate that state law will govern an ERISA claim.[13] Even if a party may, under some circumstances, waive the application of federal law to a federally preempted state law claim by failing to raise federal law in a timely fashion, Dueringer, 842 F.2d at 130, it would go too far to hold that parties could agree to apply state law to an ERISA claim. The principal reason for the breadth of ERISA preemption is to prevent the development of a competing line of cases decided under state law:
[T]he detailed provisions of § 502(a) [29 U.S.C. § 1132(a) ] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.
Dedeaux, 107 S.Ct. at 1556. We think the district court’s language, if taken literally, would be inconsistent with this clearly expressed concern for uniformity in the law governing employee benefit plans.
Having determined that the district court did not abuse its discretion in holding that the defendant waived application of federal law—our disapproval of the dicta discussed above being a separate matter— we must consider whether it would nevertheless be appropriate for this court to apply federal law for the first time on appeal, now that the parties have had the opportunity to address the issue in their briefs.
We will ordinarily consider an argument advanced for the first time on appeal only if the issue is a purely legal one and if consideration of the argument is necessary to avoid a miscarriage of justice. D.K.G. Appaloosas, 829 F.2d at 537-38; In re Goff, 812 F.2d 931, 933 (5th Cir.1987); Holiday Inns, Inc. v. Alberding, 683 F.2d 931, 934 (5th Cir.1982). The discretion to entertain a legal argument for the first *522 time on appeal is “not a right to afford a defeated litigant another day in court because he thinks that if he were given the opportunity to try his case again upon a different theory he might prevail.” Id.; see also In re Goff, 812 F.2d at 933.
The Plan, having lost its state law argument, now seeks to benefit from the more favorable federal law standard which the district court has called to its attention. How, precisely, the Plan managed to overlook the governing federal law in the first place is unclear.
Holloway’s state court complaint explicitly stated that the claim was brought “under and pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to [Holloway] as a Participant under the terms of his [sic] plan, to enforce his rights under the terms of the plan and to clarify his rights to future benefits under the plan.” While Holloway in his brief to the district court subsequently referred to his initial claim as a “simple breach of contract ease,” he again stated that the claim was brought under 29 U.S.C. § 1132, ERISA’s civil enforcement provision. Given that Holloway clearly identified his claim from the outset as an ERISA action, there should have been no question that federal law would apply to the case. There is, moreover, no doubt that the defendant was aware that ERISA governed the case: The Plan’s first defense to this action was to argue that Holloway lacked standing under ERISA because he was not a participant in the Plan.[14] State law entered this case not because Holloway erroneously characterized his claim as a state law cause of action, but because the Plan relied on Texas common law for its alternative argument that Holloway had waived his rights under the Plan. Having been aware that ERISA applied, the Plan should also have been aware that “[ajccording to the clear weight of federal authority, the actions of the trustees in the administration of [an employee benefit] plan must be sustained as a matter of law unless plaintiff can prove such activities have been arbitrary or capricious.”[15]
We would ordinarily be reluctant to allow a party to benefit, at this late date, from such a remarkable oversight. We recognize, however, that the size of Holloway’s judgment could substantially affect the amount of Plan assets available for distribution to other beneficiaries. Thus, if the application of the federal standard would, as the Plan contends, alter the outcome of this case, our refusal to apply federal law could result in an injustice to those other beneficiaries. We are convinced, however, that the result would have been the same had federal law been applied.[16]
*523 First, we note that whatever law governed, the Plan would have had to assert as a defense to Holloway’s action that Holloway had waived his rights under the Plan.[17] The waiver argument should have been framed in terms of federal common law rather than Texas state law.[18] The resolution of the issue, however, would have been the same. The development of federal common law may be informed by state law[19] and, to the extent that there is a distinct federal common law of waiver, that law does not differ significantly from corresponding Texas law. Under either federal or Texas law, waiver is the intentional relinquishment or abandonment of a known right or privilege. Compare Johnson v. Zerbst, 304 U.S. at 464, 58 S.Ct. at 1023 with Jackson v. National Flood Insurers Ass’n, 398 F.Supp. 1383, 1388 (S.D.Tex.1974) (applying Texas state law). The district court agreed with the bankruptcy court that Holloway did not intentionally relinquish his rights under the Plan. That conclusion would be fatal to the Plan’s defense under federal common law as well as under Texas state law.
Of course the proper inquiry under ERISA would not have been simply whether Holloway in fact waived his rights, but whether the Plan administrator acted arbitrarily or capriciously in determining that Holloway had waived his rights. However, even if the argument was properly framed in terms of the arbitrary and capricious standard, the Plan would not prevail.
While the arbitrary and capricious standard of review is extremely deferential, we have held that “[a] rational and reasonable interpretation of a plan may still be arbitrary and capricious if contrary to the plain meaning of the plan. ‘Where the trustees impose a standard not required by the ... plan itself, this court has stated that such action “would result in an unwarranted and arbitrary construction of the Plan.” ’ ” Dennard, 681 F.2d at 314 (quoting Morgan v. Mullins, 643 F.2d 1320, 1321 (8th Cir.1981)); Ganze, 741 F.2d at 793.
*524 Thus, we have recognized that although a deferential standard is “absolutely necessary to ensure that Plan fiduciaries retain the primary responsibility for claims processing that Congress intended,” Denton v. First Int’l Bank of Waco, 765 F.2d 1295, 1304 (5th Cir.1985), fidelity to the written terms of an employee benefit plan is essential to give effect to one of the central purposes of ERISA — to protect the beneficiaries of benefit plans by insuring that employees are fully and accurately apprised of their rights under the plan. Toward that end, ERISA imposes on the administrators of employee benefit plans a number of reporting and disclosure requirements, 29 U.S.C. §§ 1021-30, and provides that all such plans be governed by a written instrument, id. § 1102. See H.R. Rep. No. 533, 93d Cong. (1973), reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4648-49, 4657. Although these provisions are not at issue in this case, they illustrate the importance of written instruments in ERISA’s statutory scheme. See McKnight v. Southern Life and Health Ins., Co., 758 F.2d 1566, 1570 (11th Cir.1985) (rejecting defendant’s argument that in the event of inconsistency between plan and plan summary the plan should govern because, even if trustee’s interpretation of plan was reasonable, adoption of defendant’s argument would defeat purpose of requiring plan summary which is intended to provide simple and clear explanation of plan on which employees could rely); Nachwalter v. Christie, 805 F.2d 956 (11th Cir.1986) (allowing oral modifications of ERISA plans would defeat purpose of requiring written instrument on which employees could rely).
We recognized this principle in Dennard, holding that “[t]he specific language of a plan is a major consideration in determining whether a plan’s administrator or trustees have acted arbitrarily or capriciously or not in good faith.” 681 F.2d at 316. In Dennard, we found that summary judgment for the Plan was inappropriate where the Plan administrators appeared to have interpreted the Plan in a manner contrary to its plain meaning, and where the interpretation appeared to be at odds with other provisions of the Plan and with IRS rulings. Id. at 318. While the procedural posture of Dennard required us to draw all inferences from the record in the manner most favorable to the employee, that fact does not dilute the importance of Den-nard ’s language regarding the significance of the plan’s specific language.[20]
In the instant case, Article III, section 3.01 of the HECI profit-sharing plan expressly provides that “any employee may elect not to participate [in the Plan] by giving written notice to the Plan Adminis *525 trator.” The Plan conceded that Holloway never provided written notice that he intended to withdraw from the Plan, but contended that he nevertheless waived his right to participate by acting in a fashion inconsistent with an intent to participate. In other words, the Plan administrator interpreted Article III, section 3.01 to allow an unwritten, non-express election not to participate in the Plan. It is difficult to imagine an interpretation which would conflict more directly with the plain language of the Plan.[21]
Such a frank attempt to avoid the clear language of a plan is precisely the kind of conduct that courts have consistently found to be arbitrary and capricious—particularly when the disputed interpretation involves a waiver of rights under the Plan. Other circuits, applying the same principle that we enunciated in Dennard—the importance of fidelity to the plain language of a plan—have held that a plan administrator’s determination that a participant waived his or her rights under a plan is arbitrary and capricious when the waiver does not conform to the express terms of the plan.
In Bouchard v. Crystal Coin Shop, Inc., 843 F.2d 10, 18 (1988), the First Circuit held that a plan administrator acted arbitrarily and capriciously in interpreting a provision of the Plan to allow distribution of nonfor-feitable benefits without the plaintiff’s written consent where the Plan expressly required written consent.
Similarly, in Wolf v. National Shopmen Pension Fund, 728 F.2d 182 (1984), the Third Circuit held that the Plan trustees acted arbitrarily and capriciously in determining that the plaintiff’s husband had waived certain rights under the pension plan where the waiver could not have been effective under the express terms of the Plan.
The facts of this case are if anything more clear than those of either Bouchard or Wolf. Given ERISA’s emphasis on the importance oí adhering to the written instruments which govern an employee benefit plan, we find it inconceivable that the outcome of this case would be different under the arbitrary and capricious standard. Indeed, the Plan may have received a more favorable treatment of its argument by failing to invoke the arbitrary and capricious standard. Having elected to take advantage of the favorable tax treatment available under ERISA, a plan may not then flout its obligation under the statute to administer the plan according to its own terms.

C. Estoppel

The Plan argues, finally, that Holloway was estopped from claiming benefits under the Plan. The district court did not address this issue on appeal, concluding that the Plan’s references to this argument were “sporadic and passing” and therefore not properly presented for appeal. 76 B.R. at 572 n. 15. The decision whether to entertain an argument not properly presented for appeal, like the decision whether to entertain an argument not raised in the trial court, is within the discretion of the court. See supra section II.A & note 8. The Plan, in its brief to the district court, listed estoppel as an issue, but failed to argue the point in the body of the brief. A court may decline to address an argument that is not adequately briefed. United States v. Ballard, 779 F.2d 287, 295 (5th Cir.), cert. denied, 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986) (party abandoned claims on appeal by failing to brief issues adequately); see also 16 Wright, Miller, Cooper & Gressman, Federal Practice & Procedure § 3974, at 421 n. 1 (1985 & Supp.1988). We therefore find no indication that the district court abused its discretion in declining to consider this issue.[22] See In re Braniff Airways, 774 F.2d at 1305.

*526
D. Conclusion

We emphasize in conclusion that this decision is narrowly confined to its facts. In holding that the district court did not abuse its discretion in finding that the parties waived application of federal law, we announce no general principle regarding the proper course of conduct for an appellate court confronted with a situation in which the parties fail to argue the applicable federal law in a federally preempted area such as ERISA. Our holding is necessarily colored by our position in this case as a second-level appellate court. Similarly, our discussion of federal law serves only to illustrate that no miscarriage of justice would result in this case from a refusal to apply the federal law standard for the first time on appeal: It does not constitute a holding on the merits. Finding no reversible error, we leave the district court’s decision undisturbed — except that we disapprove of the dicta in its opinion suggesting that parties may stipulate that state law will govern an ERISA action.
III.
For the foregoing reasons, the judgment of the district court is AFFIRMED.

. HECI was originally known as Humble Exploration Company, Inc. but later changed its name, apparently as a result of a lawsuit brought by Exxon Corporation concerning the use of the name "Humble." See Exxon Corp. v. Humble Exploration Co., 524 F.Supp. 450 (N.D.Tex.1981), aff’d in part, rev’d in part, 695 F.2d 96 (5th Cir.1983), on remand, 592 F.Supp. 1226 (N.D.Tex.1984).

. As the district court noted, a summary of the state court and related federal litigation which led to Holloway’s termination may be found in Browning v. Navarro, 743 F.2d 1069, 1071-73 (5th Cir.1984), rev’g, 37 B.R. 201 (N.D.Tex.1983), and in the bankruptcy court’s opinion in that case, 37 B.R. at 203-06.

. The district court noted that:
In his brief (Appellee Br. at 36-37) Holloway characterizes his lawsuit as a "simple breach of contract case.” The court holds, however, that this is a federally-preempted field and that, pursuant to 29 U.S.C. § 1144(a), Holloway has an exclusive federal cause of action (which, pursuant to 29 U.S.C. § 1132(e)(1), may be maintained in federal or state court) to recover benefits from an ERISA-qualified plan. See Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).
In re HECI, 76 B.R. at 565 n. 3.
Although the district court was correct in noting that Holloway characterized his lawsuit as a "simple breach of contract case,” Holloway also properly identified his case as arising under ERISA — in both his original state court complaint and his brief to the district court. The preemption issue is discussed in detail below.

.We note that Navarro’s dual role creates the possibility of a conflict of interest which could cast doubt upon the legitimacy of the Plan’s decision to deny Holloway’s claim. However, because we uphold Holloway’s claim on other grounds, we do not reach this issue.

. The Plan also suggests that the district court’s decision was clearly inconsistent in that it affirmed the bankruptcy court’s conclusion that Holloway waived his right to the June 1984 Plan distribution. The bankruptcy court had ruled that Holloway’s failure to object to a notice of the distribution and his inaction in failing to seek a court hearing or order blocking the distribution constituted a "limited waiver" of his rights in the distribution. The district court, however, was not empowered to reach the merits of that portion of the bankruptcy court decision because Holloway did not file a notice of appeal. As the district court wrote:
Fed. R. Bankr.P. 8002(a) provides that, when a timely notice of appeal is filed by a party, any other party may file a notice of appeal within ten days of the date on which the first notice of appeal was filed. Holloway did not file a notice of appeal and this court lacks jurisdiction to consider his attack on the judgment. See (In re ] Ambassador Park Hotel, 61 B.R. [792] at 796 [ (N.D.Tex.1986) ]; see also Colvin v. Dempsey-Tegeler & Co., 477 F.2d 1283, 1292 (5th Cir.1973) (Fed. R. App. P. 4(a) case) (appellee cannot question trial court’s judgment in the absence of the filing of a notice of cross-appeal).
76 B.R. at 573. Consequently, the district court’s decision was not inconsistent for the merits of the bankruptcy court's finding of a limited waiver were not properly presented for review by the district court. The issue is also not presented in this appeal.

. As noted above, the district court found that it did not have jurisdiction to review the bankruptcy court’s holding that Holloway waived his rights to the Plan’s 1984 distribution. Holloway does not dispute that holding in his brief on appeal and stated at oral argument that he declined to challenge that decision. We therefore do not address it.

. While both questions fall within the broader question of when a party will be deemed to have waived an issue by neglecting it, they should be addressed separately because they implicate different considerations. As our holding in Domed Stadium indicates, a court need not address an issue that it notices, but that the parties have failed to address explicitly. 732 F.2d at 488 n. 7. This proposition is related to, but distinct from, the principle that we will not address an issue raised for the first time on appeal unless it is a purely legal issue and our refusal to consider it would result in a miscarriage of justice. United States v. D.K.G. Appaloosas, Inc., 829 F.2d 532, 537-38 (5th Cir.1987), cert. denied, — U.S. -, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988). This distinction is particularly clear in this case. The district court raised the issue of federal law sua sponte, without benefit of briefs or oral argument on the subject. Now, however, that the district court has raised the issue, both parties have addressed it in their briefs and oral arguments to this court.
Separate consideration of these questions is appropriate for the additional reason that the decision whether to entertain an issue not presented in the trial court is within the discre *519 tion of the appellate court. Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Thus, while we hold that the district court did not err in its holding, that conclusion does not resolve the separate question whether this court may, within its discretion, entertain the issue at this second level of appeal—now that the issue has been raised by the district court and addressed by the parties.

. Although the Plan argues that the district court’s reliance on Domed Stadium was misplaced, we believe that the proposition for which the district court cited the case is both correct and consistent with Wulff. See supra note 7.
In Domed Stadium, we noted that the defendant’s rebuttal of one of the plaintiff s arguments suggested an additional argument that had not been pursued by the plaintiff at trial, in its brief to the appellate court, or at oral argument. We declined, under the circumstances, to address the issue. 732 F.2d at 488 n. 7. Domed Stadium is therefore consistent with the established rule that a court will not consider issues not briefed. See McGruder, 733 F.2d at 1148; Zuccarello v. Exxon Corp., 756 F.2d 402, 407-08 (5th Cir.1985) (Party waives issue by failing to comply with Fed.R.App.P. 28(a)(4) which requires parties to brief all issues to be considered on appeal); see also Neeley v. Bankers Trust Co., 757 F.2d 621, 630 (5th Cir.1985) (party abandons issue by failing to raise it). Having noticed an issue that the parties have failed to address, a court may, of course, remand the case or request additional briefing from the parties. Unless the issue is one that a court is obligated to consider sua sponte, however, that decision is within the discretion of the court.

. The scope of ERISA's preemption provisions, modelled after § 301 of the Labor Management Relations Act, is extremely broad. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987) (state law contract and tort claims preempted by ERISA which provided exclusive federal law remedy); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987) (suit purporting to raise only state law claims was necessarily federal in character by virtue of Congress’ intent that ERISA preempt state law so that well-pleaded complaint rule did not prevent the defendant from removing the case to federal court); Hermann Hospital v. MEBA Medical & Benefits Plan, 845 F.2d 1286, 1290 (5th Cir.1988).

. Although Dueringer was decided after the district court’s decision in this case, it draws on older cases — involving the identical issue under the LMRA — which indicate that federal preemption alone is not a sufficiently strong consideration to compel a court to consider the issue for the first time on appeal.
We also note that the defendant in this case, as in Dueringer, does not raise the issue of preemption in order to challenge the forum, but in order to challenge the law that has been applied to the case.

. The Plan further relies upon Rehmar v. Smith, 555 F.2d 1362 (9th Cir.1976) (arbitrary and capricious standard applies to decisions of pension plan trustee under the LMRA), for the proposition that an appellate court, having raised sua sponte the applicability of federal law, should remand the case for further proceedings. Given that Rehmar itself is at least somewhat inconsistent with the Ninth Circuit cases discussed supra, Rehmar only illustrates further the ambiguity that we have noted. Reh-mar does not stand for the proposition that an appellate court cannot hold that a party has waived the application of federal law by failing to argue it.

. Having decided that the district court did not abuse its discretion in applying Texas law, we also hold that the district court properly concluded that the bankruptcy court’s finding that Holloway did not waive his right to participate in the Plan was not clearly erroneous.
The district court properly noted that the question of intent, central to the issue of waiver, is, under Texas law, for the trier of fact. 76 B.R. at 573 (citing Kolb v. Texas Employers’ Ins. Ass’n, 585 S.W.2d 870, 873 (Tex.Civ.App.—Texarkana 1979, writ refd n.r.e.). Upon reviewing the record, we agree with the district court that the bankruptcy court's findings are not clearly erroneous under the standard set forth in Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985).
The Plan contends that a stricter standard of waiver should have been applied because Holloway was, at one time, a co-trustee of the Plan. Although the district court did not address this issue explicitly, the bankruptcy court did consider this argument and held that Holloway’s "fence straddling" while a co-trustee constituted a waiver of his rights only with respect to the 1984 distribution.
While we have some doubt as to the viability of the Plan’s underlying theory that a stricter standard should have been applied because of Holloway's status as co-trustee, we need not reach that issue because we find no reversible error in the bankruptcy court's finding that, even under the stricter standard, Holloway waived his rights only to the 1984 distribution and because the decision regarding the 1984 distribution itself is not contested here. See supra note 6.
*521 As stated above, any determination that Holloway waived his rights turns necessarily upon Holloway’s intent at the relevant times—a question for the trier of fact. Thus, the bankruptcy court’s holding may not be disturbed unless it is clearly erroneous. A finding of fact is clearly erroneous only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Anderson, 470 U.S. at 573, 105 S.Ct. at 1511. “If the [trier of fact’s] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id. at 573-74, 105 S.Ct. at 1511-12. Upon careful review of the record, we cannot conclude that the bankruptcy court's holding that Holloway's "fence straddling” while a co-trustee of the plan constituted a waiver only with respect to the 1984 distribution is so implausible as to be clearly erroneous.

. The Plan argues that the case on which the district court relied for this point, Casio, Inc. v. S.M. & R. Co., 755 F.2d 528, 531 (7th Cir.1985), is inapposite because it involves a simple choice of law question. We agree that the Seventh Circuit’s reasoning should not be extended to apply to the choice between state and federal law in a federally preempted area. Such a decision would fly in the face of Congress’ intent to create an exclusive federal law to govern employee benefit plans.
Although our recent decision in Dueringer discusses ERISA preemption in terms of choice of law, it does so simply to distinguish between cases in which availability of the preemption defense would affect the choice of forum and those in which availability of the defense would affect only the law to govern the case. 842 F.2d at 130; see abo Johnson, 813 F.2d at 1043-44; Gilchrist, 803 F.2d at 1497. A court may not hold that a defendant has waived its preemption defense by failing to raise the issue in a timely fashion where that holding would deprive the plaintiff of access to an otherwise available federal forum. Johnson, 842 F.2d at 1043. A defendant may, however, be held to have waived its preemption defense where the waiver will affect only the law to be applied. Id. at 1044.
We do not think that the panel in Dueringer intended, simply by using the words "choice of law," to imply that parties could stipulate that state law would govern a federally preempted claim in the same way that parties may stipulate that claims arising under a specific contract will be governed by the law of a particular state. Such a reading would be inconsistent with De-deaux. See supra note 9.

. We note that neither the bankruptcy court nor the district court explicitly held that Holloway had standing to sue under ERISA. However, because both courts determined that Holloway was a participant in the plan, it necessarily follows that he had standing to bring this suit. 29 U.S.C. § 1132.

. Dennard, 661 F.2d at 313 (emphasis added); Ganze, 741 F.2d at 792-93; Boyles, 602 F.2d at 99 & 100 n. 3; see also Jestings v. New England Tel. & Tel. Co., 757 F.2d 8, 9 (1st Cir.1985); Miles v. New York State Teamsters Conference Pension, Etc. Plan, 698 F.2d 593, 599 (2d Cir.), cert. denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); Holland v. Burlington Indus., Inc., 772 F.2d 1140, 1148-49 (4th Cir.1985), aff’d mem. sub nom. Brooks v. Burlington Indus., Inc., 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed. 2d 599 (1986); Adcock v. Firestone Tire & Rubber Co., 822 F.2d 623, 626 (6th Cir.1987); Pokratz v. Jones Dairy Farm, 771 F.2d 206, 208-09 (7th Cir.1985); Malhiot v. Southern California Retail Clerks Union, 735 F.2d 1133, 1135 (9th Cir.1984), cert. denied, 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985); Sharron v. Amalgamated Foods, 704 F.2d 562, 564 (11th Cir.1983); Cf. Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134, 138-45 (3d Cir.1987) (suggesting less deferential standard of review where employer administers Plan and may have conflict of interest), cert. granted, — U.S. -, 108 S.Ct. 1288, 99 L.Ed.2d 498 (1988); Van Boxel v. Journal Co. Employee's Pension Trust, 836 F.2d 1048, 1049-53 (7th Cir.1988) (suggesting that degree of deference vary according to degree of conflict of interest).

.The following discussion does not constitute a holding on the merits under federal law. It serves only to illustrate that the Plan would not in fact secure a more favorable judgment under federal law.
We are reluctant to rest our holding on the merits of the federal law argument because, as stated above, we will ordinarily consider an argument raised for the first time on appeal only if it raises a purely legal issue and would *523 require no further findings of fact. The review of a plan administrator’s decision to deny benefits requires an examination of the evidence before the administrator at the time the final decision was rendered. Offutt v. Prudential Ins. Co., 735 F.2d 948, 950 (5th Cir.1984). Although the Plan asserts that no evidence beyond that presently contained in the record is necessary to decide whether its denial of Holloway’s claim was arbitrary or capricious, we are reluctant to characterize this issue as a purely legal one.

. Although Holloway would bear the burden of proving that the Plan acted arbitrarily and capriciously, Dennard, 661 F.2d at 313, the Plan would have had to articulate a reason for its actions in order to avoid a determination that its denial of benefits was arbitrary and capricious. The Plan’s only grounds for denying Holloway’s claim were that he had waived his right to participate in the Plan. The waiver argument therefore would have been advanced even if the Plan's defense had been framed in terms of federal law.

. Although we find no specific authority identifying a federal common law defense of waiver to ERISA actions, 29 U.S.C. § 1132(a)(1)(B) was intended to create a federal common law concerning pension rights which would augment the rights created by ERISA’s substantive provisions. Woodfork v. Marine Cooks & Stewards Union, 642 F.2d 966, 973 (5th Cir.1981).
Consistent with this mandate, other federal courts have entertained the defense of waiver in actions to recover benefits under ERISA. See District 29, United Mineworkers of America v. New River Co., 842 F.2d 734, 737 (4th Cir.1988) (no provision of ERISA precludes the knowing and voluntary relinquishment of employee health benefits, as opposed to vested retirement benefits which may not be forfeited); Holt v. Winpisinger, 811 F.2d 1532, 1541 & n. 67 (D.C.Cir.1987) (considering and rejecting defendant’s argument that plaintiff waived right to vesting credits). Although these cases do not state explicitly that they are applying federal common law, they rely not on state authority, but on federal authority. See id. at 1541 n. 67 (citing Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

.ERISA’s directive to fashion a federal common law governing employee benefit plans is analogous to the directive to create a federal common law with respect to collective bargaining agreements under § 301 of the LMRA. Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund, 794 F.2d 221, 235 (6th Cir.), cert. denied, 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986). Under the LMRA, federal courts may resort to state law that is compatible with the federal statutory scheme "in order to find the rule that will best effectuate the federal policy.” Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957).

. Dennard contains a detailed review of the factors to be considered in determining whether a plan administrator has acted arbitrarily and capriciously:
In Bayles, we indicated certain factors to be considered in applying the arbitrary and capricious standard: (1) uniformity of construction: (2) "fair reading” and reasonableness of that reading; and (3) unanticipated costs.... Along with the determination of the "legally” correct meaning of the plan provision in question, we also view as probative of the good faith of a trustee or administrator the following factors: (1) internal consistency of a plan under the interpretation given by the administrators or trustees; (2) any relevant regulations formulated by the appropriate administrative agencies ...; and (3) factual background of the determination by a plan and inferences of lack of good faith, if any. The fact that a trustee’s interpretation is not the correct one as determined by the District Court does not establish in itself arbitrary and capricious action, but is a factor in that determination. When the trustee’s interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior.
Dennard, 681 F.2d at 314 (emphasis added); see also Denton, 765 F.2d at 1304 (quoting Den-nard ). Most of the factors enumerated in Den-nard and Denton are not relevant here. This case is more straightforward than most of the cases in which a court has found that a plan administrator acted arbitrarily and capriciously. Holloway's contention that the Plan acted arbitrarily and capriciously in determining that he had waived his rights does not depend on an argument that the administrator’s interpretation is inconsistent with previous interpretations, with other provisions of the plan, or with administrative regulations. The issue here is simply whether the administrator’s interpretation is directly contrary to the plain language of the very clause which undisputably governs Holloway’s claim.

. The Plan argues that “may” applies not to an employee's ability to elect to withdraw from the Plan, but to the form of notice sufficient to make the withdrawal effective. This interpretation defies common sense.

. We note that the bankruptcy court did consider the estoppel argument and concluded that Holloway was estopped from asserting his rights under the Plan only with respect to the 1984 distribution. A determination that the Plan relied to its detriment on Holloway's "representations” that he did not intend to participate in the Plan is necessarily factual in nature. Thus, for the reasons set forth supra at note 12, *526 we would not in any event find reversible error in the bankruptcy court’s holding.